## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERSHEY ENTERTAINMENT & RESORTS COMPANY, | : | CIVIL ACTION NO: 1:04-CV-2641 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Christopher C. Conner) |
| | : | |
| INTERACTIVE RIDES, INC., | : | |
| | : | |
| Defendant. | : | |

| | |
|---|---|
| INTERACTIVE RIDES, INC., | : |
| | : |
| Counterclaim Plaintiff, | : |
| | : |
| | : |
| | : |
| HERSHEY ENTERTAINMENT & RESORTS COMPANY, | : |
| | : |
| Counterclaim Defendant. | : |

## TABLE OF EXHIBITS FOR INTERACTIVE RIDES, INC.'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND DECLARATORY RELIEF, WITH INCORPORATED STATEMENT OF MATERIAL UNDISPUTED FACTS

Exhibit A:    *Equipment Purchase Agreement* dated April 23, 2004

Exhibit B:    *Addendum to the Agreement Between Hershey Entertainment & Resorts Company and Interactive Rides, Inc.* dated May 14, 2004



INTERACTIVE RIDES INC.
*FOR ALL YOUR AMUSEMENT NEEDS*

708 WEST
LOGAN, U
TEL: (435
FAX: (435



**EXHIBIT**

*A*

# EQUIPMENT PURCHASE AGREEMENT

THIS EQUIPMENT PURCHASE AGREEMENT is entered into this 23rd day of April, 2004, by and between Hershey Entertainment & Resorts d/b/a Hersheypark, hereinafter called "Buyer" and Interactive Rides, Inc., hereinafter called "Seller" and the individuals listed on the signature page hereto (collectively with Buyer and Seller, the "Parties"). The Parties hereby agree as follows:

## TERMS

1. Buyer will purchase from Seller (ONE) Frequent Faller amusement ride as the same has been described and otherwise portrayed in the technical information provided to Buyer by Seller (the "Ride") for one million nine hundred ninety five thousand ($1,995,000. 00) U.S. DOLLARS (the "Purchase Price"), and Seller will manufacture the Ride at Seller's premises in a manner acceptable to Buyer. The price is FOB Logan, Utah. Buyer agrees to provide payment to Seller as follows:

| | |
|---|---|
| 10% ($199,500) Down payment | May 1, 2004  Payment to kick off engineering phase and start the ride process. |
| 10% ($199,500) Production Payment | August 1, 2004  Payment to be made upon completion of preliminary design. |
| 20% ($399,000) Production Payment | October 1, 2004 Payment to be made after final design is finished and for fabrication progress payment. |
| 30% ($598,500)"Local Operation" Payment | January 1, 2005  Payment to be made upon successful demonstration of the ride operation in Logan, UT. |
| 20% ($399,000) Operation Payment | May 1, 2005 Payment to be made after successful operation demonstration at Hersheypark. |
| 10% ($199,500) Operation Payment | June 1, 2005 Payment to be made after 30 days of operation. |

The sum of the above amounts equals the Purchase Price. Buyer will cover payments to Seller by a Corporate Check or bank wire transfer of funds to a bank account designated in writing by Seller.

See exhibit "A" – project schedule



**INTERACTIVE RIDES INC.**
*FOR ALL YOUR AMUSEMENT NEEDS*

708 WEST 1800 NORTH
LOGAN, UT 84321
TEL: (435) 755-5845
FAX: (435) 755-7021

Starting on
~~May~~, 2004
7/8 June

Seller gives monthly production and project updates to Buyer to continue through the end of the project.

Seller shall not be responsible for any delays due to changes to the ride requested by Buyer or other delays caused by Buyer.   Once the ride operation payment is received after the ride opening date, Seller will represent and warrant that the ride will be free and clear of all liens, claims and encumbrances.

## RESPONSIBILITIES

1. Minor grade changes, dimension changes, and other minor adjustments necessary to complete the work will not be subject to (or a cause for) a Change Order, production delay or price increase.  If significant changes are required by Buyer that materially increases the cost of production or installation to Seller, or if new and unexpected changes are required by Buyer after any component related to proposed changes have been approved and started, Buyer shall be responsible for such additional costs, provided that Seller informs Buyer of such costs on a timely basis and Buyer approves of such increased costs.

2. Seller will deliver to Buyer engineered drawings (including but not limited to shop drawings, engineering calculations, assembly drawings, mechanical, electrical, design, and ride software) for the coordination and completion of the Ride per project schedule  Ride drawings to be provided in two formats: Hard copies with engineering seals; Electronically as ".dwg" files.

3. Seller will provide to Buyer three (3) sets of operation and maintenance manuals for the Ride ("Operating Manuals") by January 1, 2005.

4. Seller will provide to Buyer a written installation and assembly procedure for the Ride for Buyer to review by December 1, 2004.

5. Seller will provide to Buyer the Frequent Faller ride complete with all necessary equipment and controls to operate the Ride.  The ride will have 7 vehicles, each having 4 seats and will otherwise operate and have the specifications shown in the technical information.

6. Seller will paint the ride in the colors Buyer chooses.

7. Seller will provide the ride erection and installation on-site supervision.

8. Seller will perform ride testing and commissioning on site

9. Seller warrants and guarantees (i) that the Ride will comply with the Specifications and all applicable legal and regulatory requirements of the Commonwealth of Pennsylvania; and

 **INTERACTIVE RIDES INC.**
*FOR ALL YOUR AMUSEMENT NEEDS*

708 WEST 1800 NORTH
LOGAN, UT 84321
TEL: (435) 755-5845
FAX: (435) 755-7021

(ii) for a period of one year following Opening (the "Warranty Period"), the structure and operation of the Frequent Faller, under normal and proper use, against any and all defects or failures. See exhibit "C" for list of spare parts. This one year warranty does not cover problems caused by improper maintenance or operation resulting from Buyer failing to comply with the Operating Manuals, abuse, vandalism, or modifications not approved by Seller. Seller warrants and represents that the design, workmanship, equipment materials and component parts of the Ride shall contain no defects, omissions or flaws of any kind, provided that the Ride is operated substantially in accordance with the Specifications using proper and appropriate safety measures and in substantial accordance with the Documents. Seller warrants and represents that all services associated with the design of the Ride, materials and components parts of the Ride will be the best quality and workmanship of the kind supplied. One year on-line support is included in the warranty.

10. Seller will provide any and all spare parts, labor and travel and related expenses needed for the Ride prior to expiration of the Warranty Period. Seller will provide and deliver to Buyer a parts and maintenance package at the time the Ride is completed which Buyer will have on hand at the Ride location. During the Warranty Period, any replacement parts or services required beyond those in the typical, initial replacement parts package provided with the Ride (necessitated because of faulty original equipment) will be supplied by Seller. In the event of down time Seller will respond and be on Buyer's site immediately. Seller agrees that for a minimum of ten (10) years following the Opening, Seller shall fully support the Ride, including the manufacture of component parts needed for the Ride, to enable Buyer to adequately maintain and operate the Ride.

11. The relationship of Seller to Buyer under this Agreement shall be that of an independent contractor, and no agency or employee relationship shall be implied by this Agreement. As an independent contractor, Seller shall be responsible for, and shall indemnify and hold Buyer harmless from, all claims, demands, costs, damages and expenses arising out of its acts and those of Seller's employees, servants, subcontractors, officers and agents.

## PRODUCTS AND SERVICES PROVIDED BY SELLER

- **Ride Structure and Base Structure:** Seller will provide the ride structure consisting of:
  - a 150 foot high coaster structure with 600 feet of track.
  - a footprint of approximately 40 by 115 feet.

  All structure will be designed and engineered to applicable governing codes. The ride structure and base structure will be painted to colors chosen or approved by Hersheypark personnel. Ride shall comply to current UBC-2003, ASC 7, ASTM F-24, ASCE 7-98 and OSHA standards.

- **Passenger Vehicle and restraints:** Seller will provide seven (7) Passenger vehicles and restraints with 4 seats per vehicle and redundant monitored restraints. The Passenger Seats with and pivoting passenger vehicles will be themed similar to the drawings and video and painted colors chosen or approved by Hersheypark personnel.

 **INTERACTIVE RIDES INC.**
*FOR ALL YOUR AMUSEMENT NEEDS*

708 WEST 1800 NORTH
LOGAN, UT 84321
TEL: (435) 755-5845
FAX: (435) 755-7021

- **Lift System:** Seller will provide the complete chain lift system including all motors, gear boxes, linkages and connections. The lift system components will be contained within the ride structure.

- **Control System:** Seller will provide a state-of-the-art Allen-Bradley ride control system. The control system will be designed, built and tested to applicable codes to ensure safe and reliable control of the ride. An Operator Console will be provided that will be user friendly. Seller will provide and install all control wiring.

- **Safety:** All safety critical systems will be redundant. Seller will test and submit results of testing to Buyer demonstrating their escape proof restraints. Seller to provide lock out - tag out procedures.

- **Lighting:** Seller will provide lighting to the signage on top of the ride, and will provide the wording on the sign provided.

- **Shipping and Installation:** Seller will prepare the ride to ship to Hershey, PA. Buyer will pay for shipping charges. Seller will provide installation supervision. All parts and components will be clearly marked prior to shipment.

- **Permitting:** Seller will provide and submit to Buyer all necessary documents in paper and electronic format, including but not limited to: Maintenance Manual, Operation Manual, Ride Commissioning Test and Engineering Calculations and assembly drawings. Ride shall comply to current UBC-2003, ASC 7, ASTM F-24, ASCE 7-98 and OSHA standards.

- **Pre-Testing:** Seller will assemble and test the ride prior to shipping. Seller will perform complete functional and safety testing prior to shipping. Hersheypark personnel will have the opportunity to inspect the ride prior to shipping.

- **On-Site Training:** Seller will provide on Buyer's property all maintenance and operations training to Buyer's personnel as may be reasonably requested from time to time. Seller personnel will be available at Buyer's property to assist Buyer's personnel with all required inspections prior to the expiration of the Warranty Period.

- **Emergency Evacuation:** Seller will provide evacuation procedures and required hardware for guest evacuation in the event of a necessary evacuation of the passenger vehicle after ride dispatch. Seller will provide spiral stairs up to the top of the ride near the lift and catwalks to all block points to be used for evacuation.

- Accelerometer testing to be completed by Seller.

- Air compressors provided by seller.



**INTERACTIVE RIDES INC.**
*FOR ALL YOUR AMUSEMENT NEEDS*

708 WEST 1800 NORTH
LOGAN, UT 84321
TEL: (435) 755-5845
FAX: (435) 755-7021

## RESPONSIBILITIES OF BUYER

- **Electrical:**   Buyer will provide the electricity and electrical hookups to within five (5) feet of the ride and ride systems.  Seller shall provide to Buyer specifications with respect to the Ride's electrical needs per project schedule.

- **Foundation and Installation:**   Buyer will be responsible for all foundation and installation costs, including required materials to construct and erect the ride and ride foundation, crane and equipment rentals, labor costs, etc.

- **Control Room:**   Buyer will be responsible for providing a room or structure to house the ride controls and controls operator.

- **Loading / Unloading Platform:**   Buyer shall construct and provide for a platform for ride vehicle load / unloading.

- **Loading Gates & Queuing:** Buyer shall be responsible for all loading gates and queuing line requirements.

- **Landscaping:**   Buyer shall be responsible for all required landscaping.

- **Shipping:**   Buyer will be responsible for all shipping and unloading charges.

- **Taxes, licensing and permitting:**   Buyer will be responsible for any and all applicable taxes and license fees and all required permitting.

- **Operating Insurance:**   Buyer is responsible for all operating liability insurance.


## ADDITIONAL ITEMS

1. Product Liability Insurance:  Seller has obtained and will keep in force – for at least one year – product liability insurance ($5,000,000. 00 coverage) with verifiable coverage of this, Frequent Faller in Hershey, Pennsylvania and Seller shall provide to Buyer a certificate to this effect and that the insurance may not be terminated before expiration of the Warranty Period.

2. Exclusive Territory:  Seller agrees to an exclusive territory around Hersheypark and will not sell and install a Frequent Faller coaster for a period of two years from the date the ride opens to the public.  This territory will be an approximately 200 mile radius from Hershey, P.A and includes but not limited to the following amusement parks: Dorney Park, Paramount Kings Dominion, Six Flags America, Six Flags Great Adventure, Kennywood, Del Grosso's and Knoebels Groves Amusement Park.

 **INTERACTIVE RIDES INC.**
*FOR ALL YOUR AMUSEMENT NEEDS*

708 WEST 1800 NORTH
LOGAN, UT 84321
TEL: (435) 755-5845
FAX: (435) 755-7021

3. Meeting notes from March 10, 2004 and attached as exhibit B are incorporated into this agreement.

4. The address of Seller and Buyer are as follows:

| SELLER | BUYER |
|---|---|
| Interactive Rides, Inc. | Hersheypark |
| 708 West 1800 North | 100 W. Hersheypark Drive |
| Logan, Utah 84321 | Hershey, PA 17033 |
| Tel: 435-755-5845 | Tel: 717-534-3900 |
| Fax: 435-755-7021 | Fax: 717-534-8909 |

Any changes to this Agreement and any waiver of rights shall be in writing and signed by both Buyer and Seller.

This Equipment Purchase Agreement signed and entered into this 23rd day of April, 2004.

By and for:

BY: _____
Clay Slade
President
Interactive Rides, Inc.

BY: _____
William F. Simpson
Vice President
Hersheypark

BY: _____
Val Potter
Director of Sales
Interactive Rides, Inc.

6



# ADDENDUM TO THE AGREEMENT
## BETWEEN
## HERSHEY ENTERTAINMENT & RESORTS COMPANY
## AND
## INTERACTIVE RIDES, INC.

THIS ADDENDUM made May 14ᵀᴴ, 2004, by and between Hershey Entertainment & Resorts Company, a Pennsylvania corporation having its principal place of business at 300 Park Boulevard, Hershey, PA 17033 ("HE&R" or "Purchaser") and Interactive Rides, Inc., having its principal place of business located at 708 West 1800 North, Logan, Utah ("Interactive" or Seller".)

## BACKGROUND

HE&R owns and operates the HERSHEYPARK Entertainment Complex (collectively referred to as "HP" or the "Park"), which is open to the general public, and located in Derry Township, Dauphin County, Pennsylvania.

On May 14, 2004 HE&R d/b/a HP and Interactive (hereinafter singularly "Party" or collectively "the Parties") entered into an agreement ("Agreement"), attached as **Exhibit A**, under which the Parties agreed to undertake certain obligations in exchange for certain benefits.

The purchase of an amusement ride for the Park is the subject of the Agreement.

The Seller is engaged in the business of designing, manufacturing and selling amusement rides.

The Purchaser desires to purchase from the Seller and the Seller desires to sell to the Purchaser an amusement ride for the Park (hereinafter sometimes called "the Ride") as further described in **Exhibit A**.

The Seller will prepare the design and drawings and deliver the physical components of the Ride and render other services in connection with the Ride as specified in the Agreement and herein, and the Purchaser will be responsible for the supervision of on-site assembly and installation of the Ride in the Park in accordance with the drawings and instructions to be provided by the Seller.

The Parties wish to modify the Agreement through this Addendum. This Addendum hereby modifies the Agreement entered into between HE&R and Interactive.

All capitalized terms in this Addendum have the same meaning as set forth in the Agreement, unless otherwise defined herein.

1

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and intending to be legally bound, HE&R and Interactive agree as follows:

The BACKGROUND set forth above is incorporated into the terms and conditions of this Addendum.

The term of this Addendum shall run coterminous with the Term of the Agreement, unless otherwise extended herein.

All terms, provisions and covenants of the Agreement shall remain in full force for the duration of the Addendum, except as modified herein.

If there is a conflict between the terms of the Agreement and this Addendum, this Addendum will be the controlling document.

Section 1.0    Equipment and Services

1.1    The equipment to be sold by the Seller to the Purchaser shall be new and shall include the components and services described in **Exhibit A** attached hereto and made a part of this Addendum, and such other components and services as are necessary to comply with the Agreement and this Addendum. The physical components of the amusement Ride to be sold pursuant to this Agreement are hereinafter sometimes referred to as the "Equipment."

Section 2.0    Price, Payment Terms and Shipping Date

2.1    The purchase price, the time and manner of payment, and the shipping dates for the Equipment and services to be sold and delivered by the Seller to the Purchaser pursuant to this Addendum are set forth in **Exhibit A**. The Purchaser promises to pay to the Seller the purchase price at the times provided for in **Exhibit A**. The purchase price shall constitute payment in full for the Equipment and services to be provided by the Seller under this Addendum and the Agreement, except to the extent that additional amounts as herein provided may become due on account of Purchaser's desire to order extra equipment or services, or otherwise to expand the scope of the Seller's obligations hereunder.

Section 3.0    Changes in the Work

3.1    Changes.  Changes in the Ride may be accomplished after execution of this Addendum, and without invalidating the Addendum or Agreement, by Change Order or order for a minor change in the Ride, subject to the limitations stated in this Section and elsewhere in the contract documents. The parties must mutually agree in writing upon any changes that would materially alter the Ride.

2

3.2     Change Orders.  A Change Order is a written instrument prepared by Purchaser, and signed by Purchaser and Seller, stating their agreement upon all of the following:  A change in the Ride; the amount of the adjustment in the purchase price, if any; and the extent of the adjustment in the delivery date, if any.

3.3     Minor Changes in the Ride.  Purchaser shall have authority to order minor changes in the Ride, providing such changes do not require adjustment in the purchase price or delivery date, and are not inconsistent with the intent of the contract documents.  Such changes shall be effected by written order and shall be binding on Purchaser and Seller.  Seller shall carry out such written orders promptly.

Section 4.0     Seller's and Purchaser's Representations

4.1     The Seller represents to the Purchaser as follows:

(1)     The Seller is a corporation validly existing and in good standing under the laws of Utah, with all taxes due paid, and the person executing his Agreement on the Seller's behalf has the power and authority to execute and deliver this Agreement on behalf of the Seller and to obligate the Seller to perform the Seller's obligations hereunder.

(2)     The Seller possesses good and marketable title to the Equipment, and parts thereof, to be delivered to the Purchaser pursuant to this Addendum and the Agreement, and will deliver an appropriate Bill of Sale or other instrument of title conveying title to the Equipment to the Purchaser, free and clear of any liens or encumbrances whatsoever, so as to document the passage of title as provided in Section 5.1 below.

(3)     All equipment, materials, instructions and other goods and services provided by the Seller pursuant to this Agreement shall be in full accordance with all known local, state and federal laws, regulations, ordinances, rules and procedures applicable to the Ride.

(4)     Throughout the Term of this Agreement and for a period of at least three (3) years following the public opening of the Ride, Seller will purchase and maintain occurrence-based insurance of the following type and with the following minimum limits:

A.     Comprehensive General Liability
        Bodily Injury & Property Damage:     $1,000,000 each occurrence
                                             $2,000,000 general aggregate

3

B.   Comprehensive Automobile Liability
Bodily Injury & Property Damage:   $1,000,000 each occurrence

C.   Product Liability:                    $5,000,000

D.   Workers' Compensation
Statutory limits in the state or province of Seller.

Seller's insurance broker/carrier has issued a letter of clarification, attached hereto as **Exhibit B** and made a part hereof, that states that Seller's policy exclusion under its Product Liability coverage is not meant to exclude coverage for Seller's design and engineering work associated with Seller's obligations under the Agreement or this Addendum.   Seller will furnish evidence of insurance to Buyer at the time of the Execution of this Addendum.   The evidence should be in the form of a Certificate of Insurance, which shall name Buyer as an additional insured on items A, B and C only.   The certificate shall contain a clause indicating that a 30-day notice of cancellation or material change will be provided to Buyer.

(5)   Seller, for itself, and on behalf of all subcontractors, suppliers, materialmen and others claiming by, through or under Seller, hereby waives and releases any and all statutory or common law mechanics', materialmen or other such lien claims, or rights to place a lien upon the Ride, HP or any improvements thereon in connection with anything Seller supplies (goods or services) to Purchaser performed or supplied under or in connection with the Agreement or this Addendum.   Seller further agrees to execute a sworn affidavit representing the payment and lien releases of all subcontractor, suppliers and materialmen, and a release of lien rights with respect to the goods and services that Seller supplied to Purchaser in connection with the Agreement or this Addendum, at such time or times and in such form as may be reasonably requested by the Purchaser.   Seller shall protect the Purchaser from all liens for labor performed, materials supplied or used by the Seller and/or any other person in connection with the goods or services that Seller supplied to Purchaser under the Agreement or this Addendum, and shall not, at anytime, suffer or permit any lien or attachment or encumbrance to be imposed by any subcontractor, suppliers or materialmen, or other person, firm or corporation, upon the Ride, HE&R, HP or any improvements thereon, by reason of any claim or demand against the Seller or otherwise connected to the goods and services that the Seller provides to the Purchaser

(6)   The Seller is either the owner or the authorized licensee of any and all patents, trade secrets, and all other intellectual property rights used in the Equipment and

4

the operation or use of the Ride. The sale of the Equipment to the Purchaser and its use at the Park shall not violate or infringe any such right held by any third party, and the Seller shall defend, indemnify and hold the Purchaser harmless from any and all claims or causes of action asserted against the Purchaser by any third party alleging any such right.

(7)   Seller shall be obligated to ensure that the Ride will satisfy the design and engineering plans and specifications developed as contemplated in this Agreement. In connection with that process, Seller will provide to Purchaser access to all information, reports and facilities necessary to monitor Seller's progress and activities relating to the Ride. All of the foregoing shall be performed by Seller in a manner satisfactory to Purchaser. Seller represents and warrants that it is an expert in the amusement ride industry. In compliance with the Section, Seller agrees to undertake certain obligations, which shall include, but not be limited to, the following:

   1) Seller will provide to Purchaser monthly updates of the ride project progress.

   2) Seller will provide to buyer a list of the various ride components and where they will be fabricated.

   3) Seller will provide to Purchaser the names and numbers and access to any and all of our major ride component sub-contractors, so that you can determine if they are on schedule and if they are current in receiving payment from Seller.

   4) Seller will allow Purchaser to visit Seller's facility, or the facility of any of Seller's ride sub-contractors at any time during the fabrication of the ride to view the ride development in progress.

4.2   The Purchaser represents to the Seller as follows:

   (1)   The Purchaser is a corporation duly organized under Pennsylvania law. The person executing this Agreement on the Purchaser's behalf has the power and authority on behalf of the Purchaser to obligate the Purchaser to perform the Purchaser's obligations hereunder.

   (2)   In operating the Equipment, the Purchaser will comply with all applicable safety codes, laws, ordinances, and industry standards and practices, and will comply with the written maintenance and operating instructions contained in the Seller's manuals provided to the Purchaser as well as with any other operating or maintenance instructions given by the Seller in writing to the Purchaser in accordance with this Addendum or the Agreement.

5

**Section 5.0    Title to Equipment, Risk of Loss, etc.**

5.1    The title to the Equipment, or parts thereof, to be delivered to the Purchaser pursuant to this Addendum and the Agreement shall pass to the Purchaser at the time the Equipment has been delivered to the Park, accepted by the Purchaser (as per Section 10.0, below), and been paid for in full.    Upon the Purchaser's reasonable request after acceptance of the Equipment and payment in full therefore, the Seller will deliver an appropriate Bill of Sale or other instrument of title, conveying title to the Equipment to the Purchaser, free and clear of any lien or encumbrance, of Seller's creation (including any lien or encumbrance created by any third party engaged by Seller), to document the passage of title.

5.2    Risk of loss to the Equipment shall pass to the Purchaser upon delivery of the Equipment to the Purchaser at the Park. If loss or damage to the Equipment occurs while it is in transit to the Park, any dates otherwise governing the time of delivery shall be extended so as to afford the Seller a reasonable time to replace or repair Equipment so lost or damaged.

**Section 6.0    Termination**

6.1    The Purchaser may terminate the Agreement at any time with or without cause upon giving the Seller twenty-one (21) days' written notice of termination as provided herein. Upon receipt of such a notice of termination, the Seller shall, to the extent possible, immediately cause fabrication of the Equipment under the Agreement to cease.

6.2    Upon termination of the Agreement, the Purchaser shall pay the Seller the purchase price provided for in Exhibit A reduced only by (a) a reasonable allowance for the cost of materials and labor which the Seller can avoid as a result of the termination, (b) the amount of any decrease in the sales commission for the Equipment caused by any reduction in the purchase price resulting from the termination, and (c) the amount of any decrease in the Seller's product liability insurance premiums caused by any reduction in the purchase price resulting from the termination.

6.3    Following the Purchaser's payment of the purchase price, reduced by the reductions provided for in the preceding paragraph, the Seller will deliver to the Purchaser all Equipment and copies of documentation relating thereto, to the extent then in existence.

**Section 7.0    Default in Performance**

7.1    The failure of the Seller to perform any of its material obligations under this Addendum or the Agreement and/or to comply with the material covenants, conditions and provisions thereof, shall constitute a default by the Seller. In the event of such default, the Purchaser may give written notice thereof to the Seller, identifying the default and directing the Seller

6

to cure the default within fifteen (15) days or, if the default cannot practically be cured within that amount of time, then within a reasonable period of time. If the Seller fails to so cure said default, the Purchaser may commence an action for damages.

7.2 By executing this Addendum, Seller acknowledges that Purchaser intends to advertise the Ride as a major new attraction for the 2005 Park season, which Ride is to be fully operational for Opening Day of the Park's 2005 season, and Seller further acknowledges that time is of the essence for the performance of its obligations under the Agreement. Seller shall complete the delivery of all of the Equipment on, or before March 28, 2005, and shall provide the Equipment and services required by this Agreement on or before the dates prescribed by this Agreement ("the Delivery Dates" as stipulates in the Agreement and/or its Exhibits). In the event that Seller fails to meet the Delivery Date by seven (7) days or more and such delay causes Purchaser to incur additional expense not contemplated by this Agreement, which expense Seller does not pay upon notice thereof, or which delay causes the Ride not to be ready to be opened to the public on or before May 15, 2005, Seller shall pay to Purchaser the sum of Four Thousand Five Hundred US Dollars ($4,500.00):

(1) per work day for each work day, or portion thereof, beyond the Delivery Date and/or;

(2) per day, or portion there of, that any service required to be performed by Seller is not properly performed in accordance with the Agreement or this Addendum by May 15, 2005 (as extended by the seven (7) day period and by any force majeure as provided in Section 16.6 of this Addendum), and/or

(3) per day, or portion thereof, beyond May 15, 2005, that the Ride is not ready to be opened to the public due to a delay by Seller (as extended by any force majeure as provided in Section 16.6 of this Addendum), up to an aggregate amount of five (5) per cent of the Purchase Price as set forth in the Agreement. Such damages shall continue to be assessed until Acceptance by Purchaser. Said sum shall be in the nature of liquidated damages, and shall not constitute a penalty.

It is agreed that said sum is a reasonable estimate of the damages Purchaser will incur in the event of late completion of the Ride in light of Purchaser's promotion of the Ride and the Ride's expected impact on Park attendance and no further damages, losses due to delay shall be claimed from Seller (Purchaser shall not have the right to chose between claiming actual and/or liquidated damages, but shall always claim liquidated damages). To the extent that Seller's failure to meet a Delivery Date is directly attributable to an act or omission of Purchaser, or a force majeure as defined in Section 16.6 of this Addendum, Seller shall not be required to pay liquidated damages, provided however, that the acts or omissions of any agents, subcontractors or other third parties utilized by Seller shall not excuse a delay. In the case of any such delay which

7

materially interferes with the schedule for the project as set forth in the Agreement and its Exhibits, the Seller shall advise the Purchaser in writing when the possibility of such delay becomes apparent. Purchaser may, in its discretion, deduct any liquidated damages from the purchase price, or require payment directly from Seller.

7.3     The Seller shall have the right to cancel the Agreement in the event of any non-payment by the Purchaser of any non-disputed amounts due and owing to the Seller hereunder which remain unpaid for a period of twenty-one (21) days after written notice of such non-payment is given by the Seller to the Purchaser.

7.4     Upon termination of the Agreement by the Purchaser in accordance with Section 7.1, sufficient right, title and interest with respect to the design, drawings and other documentation relating to the Ride and its assembly and installation shall pass to the Purchaser to allow the Purchaser to use the same for completion of the Ride, provided that the Purchaser shall have no right to assign, convey or transfer said documentation to other Parties for use by persons or entities other than the Purchaser.

Section 8.0      Seller's Limited Warranty

8.1     The Seller warrants that all Equipment furnished by it under this contract shall conform to the specifications of the Agreement and exhibits attached as Exhibit A, and that if operated and maintained in accordance with the Seller's written operating and maintenance instructions, the Equipment will be fit for its intended use as an amusement ride and be free from failure by reason of defective materials, workmanship, parts, or design for a period of one (1) year from its date of acceptance as defined in Section 10.0 below. In the event of any failure of the Equipment within the foregoing one-year limited warranty period, the Seller will design and/or furnish suitable replacement Equipment or substitute parts or components for the Equipment so as to make the Ride operable as soon as practicable. Seller further warrants that, throughout the term of this Addendum and thereafter, it shall immediately provide to Purchaser any and all service bulletins concerning or relating to the Ride.

8.2     The costs associated with repairs or design corrections under the Seller's warranty, including cost of labor, material and shipping shall be borne by the Seller, provided that:

      (1)     All repairs or adjustments which can reasonably be made by the Purchaser's personnel shall be made by the Purchaser without the associated cost of labor being charged to the Seller; and

      (2)     The Seller shall not be responsible for the costs of labor for implementing any repairs until the cost involved exceeds an amount equal to five hundred US Dollars

8

($500.00). The hourly rate for labor supplied by the Purchaser shall not exceed thirty US Dollars and fifteen cents ($30.15); and

(3)     Where the cost of labor involved in implementing any repair is equal to or exceeds one thousand US Dollars ($1,000.00), the Purchaser shall notify the Seller in writing of the labor cost involved and the contractor that the Purchaser proposes to use to make the repair. The Seller shall then have the option of (a) utilizing the contractor proposed by the Purchaser at the cost stated in the Purchaser's notice, or (b) engaging a contractor selected by the Seller, or (c) making the repair utilizing the Seller's own personnel. If the repair involved causes the Ride to be inoperable pending completion of the repair, the Seller shall ensure that its exercise of this option does not unreasonably extend the period of time during which the Ride is inoperable; and

(4)     Any defective parts shall be promptly returned to the Seller at the Seller's expense if requested by the Seller.

8.3     The Seller's limited one-year warranty shall be subject to the following further conditions:

(1)     In the event that during the one-year limited warranty period, in the Seller's judgment or upon the Purchaser's reasonable request, it shall become necessary or appropriate for the Seller or its authorized representative to inspect the Equipment or any part thereof, the Purchaser shall afford to the Seller convenient access to all parts of the Equipment and the Purchaser will cooperate fully in all respects with such inspection or inspections.

(2)     The Purchaser will as soon as practically possible notify the Seller by telephone or fax, with confirmation in writing, of any defect or malfunction of the Equipment or any part thereof.

(3)     The Purchaser will comply diligently with all written operation and maintenance instructions as set forth in any manuals supplied by the Seller with the Equipment, as well as with any other reasonable operating or maintenance instructions as given from time to time by the Seller in writing in accordance with this Agreement.

8.4     THE LIMITED WARRANTY SET FORTH IN THIS SECTION 8.0 IS IN LIEU OF ALL OTHER WARRANTIES OF ANY KIND WHATSOEVER, WHETHER EXPRESS, IMPLIED, ORAL OR STATUTORY. THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, EXCEPT AS HEREIN SET FORTH, ARE HEREBY EXPRESSLY DISCLAIMED.

Section 9.0     Limitation of Purchaser's Remedies and Seller's Limited Indemnity Undertaking

9

9.1     The Seller shall not be liable to the Purchaser for any incidental or consequential damages of any kind, unless such damages arise out of a material defect in the Equipment or its design cause by the gross negligence of the Seller.

9.2     Notwithstanding the general limitations on damages set forth in Section 9.1 above (which shall not apply to the Seller's limited indemnity undertaking set forth in this Section 9.2, or to any claim arising out of or related to Seller's representations under Sections 4.1(6) or 5.1), the Seller agrees to indemnify, defend and hold harmless the Purchaser and its employees, agents, officers, directors, affiliates and insurers from any and all losses, claims, suits, actions, penalties, assessments or liabilities of any kind or description (including reasonable attorneys' fees) arising out of or related to personal injuries (including death), property damage and strict liability claims received or sustained as a result of the Seller's negligent or defective design, engineering or manufacture of the Equipment, negligent or defective operating and maintenance instructions (including warnings) provided by the Seller to the Purchaser, or the Seller's negligent supervision of the installation of the Ride; provided, however, that if any such damage or injury was in part caused or contributed to by the Purchaser's negligent or defective installation, maintenance, repair, operation or supervision of the Equipment or the Ride, then the Purchaser shall be responsible for such damage or injury to the extent of its fault, and, to that extent, the Seller shall not be responsible for indemnifying the Purchaser for such damage or injury; and provided further that the Purchaser shall similarly indemnify, defend, and save the Seller harmless from any and all losses, claims, suits, actions, penalties, assessments or liabilities of any kind or description (including reasonable attorney's fees), if they were in part caused by or contributed to by the Purchaser's negligent or defective installation, maintenance, repair, operation or supervision of the Equipment or the Ride, to the extent of the Purchaser's fault with respect thereto. It is the intent of this paragraph that the Seller and the Purchaser shall share any such loss or damage proportionately in shares consistent with their respective liability with respect thereto.

**Section 10.0     Acceptance and Commencement of Warranty Period**

10.1    The Ride shall be deemed to be accepted as of the date of successful load-testing or when the first paying passenger is carried on the Ride, at Purchaser's discretion. Adjustment, supplies, or the furnishing of minor or accessory components after successful load-testing will be provided under the Seller's limited one-year warranty and will not be cause for non-acceptance by the Purchaser provided that the Ride is operable and safe. At the time of acceptance, as defined above, the Purchaser shall provide the Seller with a signed Acceptance/Test Certificate prior to opening the Ride to the public.

**Section 11.0     Seller's Reserved Right to Improve Future Equipment**

10

11.1   The Purchaser understands and agrees that the Seller, in connection with its amusement ride manufacturing business, reserves the right to upgrade, modify and improve the amusement ride equipment and associated parts, machinery and apparatus of the kind which is the subject of the Agreement, in future sales to other customers, whether by changes in design, materials or otherwise, without obligation of any sort to the Purchaser with respect to the Equipment supplied hereunder. Throughout the term of the Agreement, Seller shall make upgrades, modifications and improvements, as well as associated parts, machinery and apparatus available to the Purchaser at prices no greater than the lowest prices being charged to other customers.

**Section 12.0   Duties, Custom Fees, Local Assessments, Taxes, etc.**

12.1   In the event of the assessment of any duties, customs fees, national, provincial or local property, sales, gross receipts or use taxes of any sort by any taxing authority claiming jurisdiction as a result of the domicile of the Seller or the location of the premises at which the Equipment is to be manufactured, the Seller covenants and agrees to pay and discharge all such assessments, taxes, and charges and to indemnify the Purchaser and save it harmless against all loss, cost and expense arising therefrom.   Purchaser will be responsible for the payment of any local (US) property, sales, gross receipts or use taxes.

**Section 13.0   Notices**

13.1   Except as otherwise provided herein, all reports and payments, together with all notices and other communications required to be given under the terms of this Addendum or the Agreement, shall be made in writing and shall be deemed to have been made and given if mailed by first class mail, sent via facsimile transmission (with confirmation by overnight delivery service), or hand delivered to the party to receive such notice at the addresses specified in the heading of this Addendum. Either party may change their address by giving written notice thereof to the other party as provided herein.

**Section 14.0   Assignment**

14.1   Neither this Addendum nor the Agreement nor the obligations of the Seller under either the Addendum or the Agreement may be assigned by the Seller without the Purchaser's prior written consent. The Purchaser may not assign the Agreement to any other person or entity, succeeding to the Purchaser's ownership of the Equipment or the property which is the subject of the Agreement, or to any other person or entity having or acquiring an interest therein, without first obtaining the advance written consent of the Seller. The Seller shall not withhold its consent if the Purchaser's assignee is reasonably creditworthy and provides assurance acceptable to the Seller that the assignee is competent and qualified to operate the Equipment in a safe and responsible manner.   Nothing contained herein is

11

intended nor shall be construed to limit the Purchaser's ability to assign all of its right, interests and obligations hereunder to another entity which is either wholly-owned or controlled by Purchaser; for the purposes of this provision, an entity shall be "controlled" by Purchaser if the Purchaser owns at least 51% of the issued and outstanding voting securities of the entity such that the Purchaser can nominate and elect a majority of the entity's Board of Directors. This Addendum and the Agreement shall be binding upon the parties hereto, their successors and assigns.

Section 15.0    Governing Law; Jurisdiction and Venue; Language

15.1    This Addendum and the Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Pennsylvania, USA.

15.2    Any legal action, suit, or proceeding to be instituted by Purchaser with respect to this Addendum or the Agreement or any transaction, instrument or document contemplated hereby, or to enforce any judgment obtained against the Seller, shall be brought exclusively in the state courts sitting within the County of Dauphin, Commonwealth of Pennsylvania or, where applicable, the United States District Court for the Middle District of Pennsylvania. Final judgment obtained against the Seller (certified or exemplified copy of which shall be conclusive evidence of the fact and of the amount of any indebtedness therein described) in any such action, suit, or proceeding shall be conclusive and enforceable by suit on such judgment in the courts of any and all jurisdictions to which the Seller has hereby submitted.

15.3    In the event that any legal action, suit or proceeding as contemplated pursuant to subsection 15.2 above is brought by Purchaser in the courts of Pennsylvania or the United States District Court for the Middle District of Pennsylvania, the Seller hereby irrevocably consents to the service of any process or pleading therein by first class US mail, postage prepaid, or by certified mail, postage prepaid and return receipt requested, or by any other means from time to time authorized by the laws of such jurisdiction, as the Purchaser may, in its sole discretion, elect. With respect to any such legal action, suit, or proceeding brought in the courts of any other jurisdiction, the Seller hereby irrevocably consents to the service of any process or pleadings by any means from time to time authorized by the laws of such jurisdiction, as the Purchaser may, in its sole discretion, elect. For purposes of any service to be made by mail, certified or otherwise, the addresses therefore shall be those of the parties as specified in the heading of this Addendum.

15.4    **INTENTIONALLY OMITTED**

15.5    The English text of this Addendum and the Agreement and all documents and instruments delivered in connection herewith shall be deemed to be the authoritative version(s) and will be controlling for all purposes. All notices and communications under this Agreement

12

and all technical materials, documents and reports submitted to the Purchaser shall be in the English language.

Section 16.0   Miscellaneous

16.1   This Addendum and the Agreement, which includes the Background Section and all exhibits, is the exclusive statement of the agreement of the parties with respect to its subject matter and supersedes all prior Agreements, discussions, negotiations, representations, proposals and awards, written or oral, relating to the subject matter hereof.

16.2   Headings, titles and paragraph captions are inserted in this Addendum for convenience, are descriptive only, and shall not be deemed to add to or detract from, or otherwise modify the meaning of the paragraphs.

16.3   This Addendum may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same Addendum.

16.4   The terms "hereof," "herein" and "hereunder.' and words of similar import, shall be construed to refer to this Addendum as a whole, and not to any particular section, paragraph, or provision unless expressly so stated.

16.5   No amendment of this Addendum shall be effective unless the same is made in writing and signed by the parties hereto.

16.6   In the event that the performance of either party hereunder is prevented, interrupted or interfered with by reason of any governmental action, war, civil disturbance, act of God, fire, flood, strike, interruption or delay in transportation service, condition of emergency, or any other similar cause beyond the control of Purchaser or Seller, as the case may be, then the time in which the party so affected is to perform shall be extended to the extent that such performance is delayed by the force majeure.

16.7   Waiver of any covenant, condition or provision of this Addendum or the Agreement or of any breach of either shall not thereafter be deemed to be consent by the waiving party to any further waiver, modification, or breach by the other party, whether new or continuing, of the same or any other covenant, condition or provision. Failure by one of the Parties of to assert its rights for any breach should not be deemed a waiver of such rights, nor shall any such waiver be implied upon acceptance of any payment.

16.8   If any of the provisions shall be construed to be illegal or invalid, the legality or validity of any of the other provisions hereof shall not be affected thereby. The illegal or invalid provisions shall be severable, and all other provisions shall remain in full force and effect. ·

16.9   The rights and remedies specified herein, except those specified as exclusive, are in addition to and shall not restrict any right or remedy either party may have at law or in equity for any breach of this Addendum or the Agreement.

16.10  Seller recognizes that the Park is a family oriented amusement facility.  Seller and all persons in the employ or control of Seller will abide by and conduct themselves at all times in a professional manner and in accordance with Purchaser's rules and regulations while working at the Park.

16.11  Both parties shall perform their obligations pursuant to the Agreement and this Addendum in compliance with all applicable laws, rules and regulations.

16.12  Seller irrevocably consents to being photographed by Purchaser and authorizes the use and reproduction by Purchaser, or anyone authorized by Purchaser, of any and all photographs, that Purchaser may take of Seller, for any purpose whatsoever, including advertising and other commercial purposes, without any further compensation to Seller beyond that provided in the Agreement.

16.13  Seller shall maintain all confidential information so identified by Purchaser in strictest confidence, shall not disclose such information to any third party, and shall not use such information for any purpose other than the performance of its obligations under this Agreement.  Seller shall not refer to Purchaser, the Park, or any trademark or trade name owned by or licensed to Purchaser, in any advertisement or similar public announcement, without Purchaser's prior written consent, such consent shall not be unreasonably withheld.

16.14  Seller is an independent contractor, and none of Seller's employees, agents, representatives, independent contractors or individuals acting under Seller's direction shall be deemed employees of Purchaser for any reason whatsoever.  Nothing contained in this Agreement shall in any way be construed to create an employer/employee relationship, agency relationship, partnership or joint venture between the parties, and Seller shall have no power to obligate or bind Purchaser in any manner whatsoever.

16.15  Nothing herein shall be construed to authorize or permit Seller, its agents, concessionaires, licensees, or employees to use at or in connection with any of its business operations, any material containing any symbol, trademark, trade name or trade dress owned by or licensed to Purchaser (the "HERSHEY Trademarks") without Purchaser's prior written approval, except as otherwise stated and provided for herein, and then only in strict accordance with the terms and conditions called for under the Agreement or Addendum.  Upon any use or attempted use of the HERSHEY Trademarks in connection with any other use not specified herein; Purchaser shall have the right to secure injunctive relief to prevent the unauthorized use of the HERSHEY Trademarks.

14

Seller acknowledges that Purchaser uses certain trademarks, including HERSHEY, HERSHEYPARK and the "chocolate characters," under a license from Hershey Chocolate & Confectionery Company, Inc. ("HCCC"), a subsidiary of Hershey Foods Corporation ("HFC"), which are licensed to Buyer from its subsidiary, MSH South Inc. ("MSH"). Should HCCC, HFC or MSH request, at any time, that Purchaser enter into a sublicense with Seller for any uses of the HERSHEY Trademarks contemplated by the Agreement, now or in the future, Seller shall enter into such a sublicense, provided that Seller shall not be required to pay any additional consideration. At no time shall either party, directly or indirectly, during the term of the Agreement or thereafter, attack either party's ownership of any trademarks or trade dress owned or used by the other party (or the ownership of trademarks owned or used by HCCC or MSH which may be used by Purchaser under license), or the validity thereof or attack the validity of this provision.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this instrument as of the date first written above.

Interactive, Inc.                           Hershey Entertainment & Resorts Company

By:  _Clay Slade_                           By:
     _president_                             William F. Simpson
     _Interactive Rides_                     Vice President
                                            HERSHEYPARK Group

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2005, I served a true and correct copy of the foregoing **TABLE OF EXHIBITS FOR INTERACTIVE RIDES, INC.'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND DECLARATORY RELIEF, WITH INCORPORATED STATEMENT OF UNDISPUTED MATERIAL FACTS** upon the following party via U.S. Mail, first class postage prepaid, and via facsimile:

Renardo L. Hicks, Esquire
Anderson, Gulotta & Hicks, PC
121 State Street
Harrisburg, PA 17101

Henry M. Sneath
PA. I.D. No.: 40559
4710 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
412-288-4000 (Telephone)
412-288-2405 (Fax)