# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERSHEY ENTERTAINMENT & RESORTS COMPANY, | : | CIVIL ACTION NO: 1:04-CV-2641 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Christopher C. Conner) |
| | : | |
| INTERACTIVE RIDES, INC., | : | |
| | : | |
| Defendant. | : | |
| | | |
| INTERACTIVE RIDES, INC., | : | |
| | : | |
| Counterclaim Plaintiff, | : | |
| | : | |
| | : | |
| | : | |
| HERSHEY ENTERTAINMENT & RESORTS COMPANY, | : | |
| | : | |
| Counterclaim Defendant. | : | |

## EXHIBITS FOR INTERACTIVE RIDES, INC.'S BRIEF OPPOSING HERSHEY ENTERTAINMENT & RESORTS COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND ITS STATEMENT OF MATERIAL FACTS

Exhibit A:    Affidavit of Edward Clay Slade

Exhibit B:    Letter of Shaun L Peck dated December 6, 2004

Exhibit C:    Hershey Change Order for man-lift dated November 9, 2004

Respectfully Submitted,

PICADIO, SNEATH, MILLER & NORTON, P.C.

s/*Henry M. Sneath*

_____
Henry M. Sneath
PA. I.D. No.: 40559
4710 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
412-288-4000 (Telephone)
412-288-2405 (Fax)

Dated: September 6th, 2005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERSHEY ENTERTAINMENT & RESORTS COMPANY, | : | CIVIL ACTION NO: 1:04-CV-2641 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Christopher C. Conner) |
| | : | |
| INTERACTIVE RIDES, INC., | : | |
| | : | |
| Defendant. | : | |

---

| | |
|---|---|
| INTERACTIVE RIDES, INC., | : |
| | : |
| Counterclaim Plaintiff, | : |
| | : |
| | : |
| | : |
| HERSHEY ENTERTAINMENT & RESORTS COMPANY, | : |
| | : |
| Counterclaim Defendant. | : |

## AFFIDAVIT OF EDWARD CLAY SLADE
## IN SUPPORT OF INTERACTIVE RIDES, INC.'S BRIEF OPPOSING
## HERSHEY ENTERTAINMENT & RESORTS COMPANY'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT



EXHIBIT

A

STATE OF UTAH )
                : ss.
County of Cache   )

## AFFIDAVIT

Edward Clay Slade, being duly sworn, hereby states the following:

1.     I am the president of Interactive Rides, Inc. ("Interactive Rides").  I am an adult with personal knowledge of the matters set forth in this affidavit.

2.     I have a masters degree in mechanical engineering from Utah State University and I am a registered Professional Engineer in Utah and Nevada.  I have been actively involved in the amusement ride industry continuously since 1993.  During that time, I have personally been involved with more that 50 separate contracts for the manufacture and delivery of more than 100 amusement rides in the United States and other countries.

3.     Interactive Rides is a Utah corporation formed in 2000 that: (I) designs, manufactures and installs amusement rides; (ii) provides engineering consulting services; and (iii) designs, manufactures and installs automated equipment.  Interactive Rides, Inc. currently employs approximately 25 persons, 15 of whom are engineers.

4.     Interactive Rides is internationally recognized for its design, manufacture and installation of two of the highest profile amusement rides in the world: the X Scream and Insanity rides. These two rides sit atop the Stratosphere Tower, which, standing more than 1,100 feet above the Las Vegas strip, is the tallest freestanding observation tower in the United States and the tallest building west of the Mississippi River.

5.     Amusement rides designed and manufactured by Interactive Rides have been profiled by in such diverse public media as *Popular Mechanics*, the *New York Times*, the *Los Angeles Times* and Cable News Network, to name just a few.

6.     Interactive Rides entered into the contract with Hershey Entertainment & Resorts Company ("Hershey") in May 2004 with the full intention of designing, manufacturing, delivering and installing at Hershey's amusement park in Pennsylvania a roller coaster known as the "Frequent Faller" or "Turbulance" ride.

7.     When the parties entered into the contract, Hershey knew that the contract price for the Frequent Faller coaster ride it was purchasing from Interactive Rides did not provide a profit margin for Interactive Rides in the sale.

3

In pre-contract discussions, Interactive Rides had made clear to Hershey that Hershey would receive a top quality ride at a bargain-basement price because Interactive Rides would not make money on the sale of the ride.

8.     When the parties entered into the contract, Hershey knew that the reason Interactive Rides entered into the no-profit contract was because the Frequent Faller ride Hershey was purchasing was a prototype that Interactive Rides planned to use as a model for sales of similar rides to American and foreign amusement parks.  In pre-contract discussions, Interactive Rides had made clear to Hershey the reasons for signing a contract for a sale that did not provide a profit to Interactive Rides.

9.     As soon as the contract between Hershey and Interactive Rides was finalized in the spring of 2004, Interactive Rides quickly moved forward to complete additional, detailed design work and to procure vendors to fabricate the various components of Hershey's Frequent Faller ride.

10.    After Hershey and Interactive Rides entered into the contract, Hershey requested two significant changes to the Frequent Faller ride.  First, Hershey wanted a man-lift (a type of construction elevator) incorporated into the ride.  Although there had been pre-contract discussions with Hershey about

4

including a man-lift in the ride, Hershey did not decide it wanted a man-lift as part

of the ride until after the purchase price was agreed upon and the contract was

signed. Second, Hershey wanted a significantly larger evacuation platform – or

catwalk – than the platform provided in the contract.

11.     Hershey did not send a change order for the man-lift to Interactive

Rides until November 9, 2004. A true and correct copy of Hershey's man-lift

change order dated November 9, 2004 is included as Exhibit C to the exhibits for

*Interactive Ride, Inc.'s Brief Opposing Hershey Entertainment & Resort*

*Company's Motion for Partial Summary Judgment.*

12.     Interactive Rides timely met the first contract milestone by

completing its preliminary design of the Frequent Faller amusement ride for

Hershey before August 1, 2004. However, Hershey did not timely make its first

production payment to IR of $199,500.00 until September 2004 – more than a

month after the payment was due under the contract.

13.     Except for incorporating the man-lift into the final design drawings,

Interactive Rides timely met the second milestone provided in the contract by

completing the final design of the ride before October 1, 2004. Interactive Rides

was unable to incorporate the man-lift into the final design drawings of Hershey's

5

Frequent Faller ride by October 1, 2004 because Hershey did not provide Interactive Rides with either technical drawings of the man-lift or the actual man-lift from which Interactive Ride's engineers could take measurements of the man-lift. Hershey, however, never paid Interactive Rides the second production payment of $399,000.00.

14.    In early November 2004, Interactive Rides received additional quotes from vendors experienced in fabricating steel components for amusement rides. These quotes came in significantly higher than quotes received by Interactive Rides before entering into the contract with Hershey.  Such a dramatic increase in the price of fabricated steel components was unforeseen by Hershey and Interactive Rides at the time of contracting.  The primary reason for the significant increase in the price of fabricating steel components for the ride was an unforeseen, dramatic increase in the cost of labor associated with fabricating the steel components.

15.    As soon as Interactive Rides learned that fabrication costs for steel components of Hershey's Frequent Faller ride would significantly exceed the parties' expectations, Interactive Rides notified Hershey in a telephone conference call of the unforeseen cost overruns both parties were facing.

16.    Hershey's response to the notification was: 1) to request that Interactive Rides submit proposals for Hershey to consider regarding the unforeseen cost overruns; 2) to thank Interactive Rides for the prompt notification about the cost overruns; and 3) to send IR, by transmission dated November 9, 2004, a change order for installation of a man-lift in the Frequent Faller ride.

17.    In response to Hershey's request for proposals to address the unforeseen cost overruns on the ride project, Interactive Rides sent an e-mail message and attached letter dated November 12, 2004 ("IR's November 12th Letter") to Hershey making two proposals for resolving the unforeseen cost overruns.  The first proposal contemplated domestic fabrication of steel components and on-time delivery of the ride, but at significantly higher cost than the contract price.  The second proposal contemplated foreign fabrication of steel components at lower cost but slower delivery time.  In both proposals, Interactive Rides offered to take a $250,000.00 loss on the project as a gesture of good will.

18.    IR's November 12th letter was the first of two written proposals Interactive Rides submitted to Hershey – at Hershey's request – to address unforeseen cost overruns.  It must be emphasized that IR's November 12th Letter, as repeatedly pointed out in the letter itself, merely presented Interactive Rides's

7

proposals for Hershey to consider. IR's November 12th Letter was not a repudiation of, or unilateral revision to, the contract.

19.    In addition, Interactive Rides and Hershey had ongoing discussions by telephone and in person from approximately November 9, 2004 through the end of the month regarding ways to address the unforeseen cost overruns. In all of these discussions but one – a discussion on November 17, 2004 – Hershey continued to request proposals from Interactive Rides for addressing the unforeseen cost overruns. In total, there were approximately a dozen telephone conferences between Hershey and Interactive Rides in November 2004 in which resolving the unforeseen cost overruns was discussed. I personally participated in four to six of these telephone conferences.

20.    On November 17, 2004, while Val Potter and I were representing Interactive Rides at the annual convention and trade show of the International Association Amusement Parks and Attractions (IAAPA) in Orlando, Florida, we met with multiple Hershey representatives in a hotel conference room. Mr. Potter and I had been lead by Hershey to believe that the meeting was to discuss resolving the unforseen cost overruns. Instead, Hershey presented Mr. Potter and me with a letter dated November 17, 2004 ("Hershey's November 17th letter")

from Hershey's attorney demanding adequate assurances that Interactive Rides would perform its obligations under the contract.  In addition, Hershey's CEO Scott Newkam vigorously berated Interactive Rides for the unforeseen cost overruns.  At that meeting, Mr. Potter and I repeatedly assured the Hershey representatives that Interactive Rides was committed to the project and intended to deliver a Frequent Faller ride to Hershey as provided in the contract.

21.     Shortly after Mr. Potter and I met with the large group of Hershey's representatives on November 17, 2004, Hershey's General Manager Frank O'Connell and Director of Maintenance and Ride Operations Gary Chubb stopped by Interactive Rides's booth at the IAAPA conference to talk about the Frequent Faller ride contract.  In discussions at that time, Mr. O'Connell stated that Hershey wanted to work things out on the Frequent Faller ride contract and invited Interactive Rides to submit another proposal for addressing the unforeseen cost overruns.  In addition, while at Interactive Ride, Inc.'s booth, Messrs. O'Connell and Chubb viewed a complete cart (passenger vehicle on roller coasters) on display that had been manufactured for Hershey's Frequent Faller ride.

22.     Hershey's November 17th Letter was delivered on Wednesday, November 17th during the IAAPA annual trade show and convention, which lasted

9

through Sunday November 21, 2004.  I remained in Orlando for several more days

after the IAAPA convention closed.  I did not return home to Logan, Utah until

Thanksgiving day, which was Thursday, November 25, 2005.  Interactive Rides

was not able to convene a meeting of key staff at Interactive Rides offices in

Logan, Utah to discuss Hershey's November 17th Letter until later in the week

following Thanksgiving weekend because several staff members had taken long

Thanksgiving holidays.

    23.    On December 6, 2004, Interactive Rides's lawyer sent a letter ("IR's

Adequate Assurances Letter") responding to Hershey's November 17th Letter and

providing adequate assurances of Interactive Rides's intention to deliver

Hershey's Frequent Faller ride under the terms of the contract.  A true and correct

copy of IR's Adequate Assurances Letter is included as Exhibit B to the exhibits

for *Interactive Ride, Inc.'s Brief Opposing Hershey Entertainment & Resort*

*Company's Motion for Partial Summary Judgment.*

    24.    In response to Hershey's continuing requests for additional proposals

to address the unforeseen cost overruns – including requests made after the

November 17, 2004 meeting with Hershey representatives – Interactive Rides

submitted its second letter dated November 30, 2004 to Hershey ("IR's November

30th Letter) with another proposal  for addressing the unforeseen cost overrun

issue.  IR's November 30th Letter <u>was not</u> a response to Hershey's November 17th

Letter demanding adequate assurances.  On November 30, 2004, Interactive Rides

still believed that Hershey was interested in resolving the cost overruns issues and

moving forward with the Frequent Faller ride.  Accordingly, Interactive Rides

again offered in IR's November 30th Letter to take a $250,000.00 loss on the

project as a gesture of good will.  Hershey never responded to IR's November 30th

Letter.

25.    Throughout the month of November 2004 – and before –  Interactive

Rides continually invited Hershey to send some of Hershey's ride staff to

Interactive Rides' offices in Logan, Utah to view the final ride design and the ride

fabrication in progress.  Hershey never sent a single representative to Interactive

Rides's offices at any time.  In all my years in the amusement ride business, I have

never before encountered a ride buyer that did not visit the seller's premises to

check the status of a prototype amusement ride during the design and manufacture

process.

26.    On December 7, 2004, Hershey commenced this lawsuit without any

further discussion with Interactive Rides regarding: 1) the contract; 2) Hershey's

repeated requests throughout November 2004 for proposals from Interactive Rides

for addressing the unforeseen cost overruns; or 3) IR's Adequate Assurances

Letter of December 6, 2004.

27.     When Hershey filed suit on December 7, 2004, Interactive Rides had

incurred more than $645,000.00 in costs while performing its obligations under

the contract.  Some of these costs included paying vendors who had manufactured,

or were in the process of manufacturing, components for Hershey's Frequent

Faller Ride.   In addition, Interactive Rides had only been paid $399,000.00 by

Hershey under the contract when Hershey filed suit.

28.     When Hershey started this lawsuit on December 7, 2004, it owed

Interactive Rides $399,000.00 for the second production payment for the final

design work completed by Interactive Rides as of October 1, 2004.

29.     It was never the intention or desire of Interactive Rides to terminate

the contract with Hershey.  From the date of the contract was entered into on May

14, 2004 until Hershey began this lawsuit on December 7, 2004, Interactive Rides

fully intended to perform its obligations under the contract by delivering and

installing a Frequent Faller ride at Hershey's amusement park as provided in the

contract.   Accordingly, Interactive Rides did not serve Hershey with a notice of

default as provided in Section 7.0 of the Addendum despite the fact that Hershey was more than one month late with the first production payment due August 1, 2004 and never paid the second production payment of $399,000.00, which was due October 1, 2004.

30.     Even after Hershey filed the lawsuit, Interactive Rides wanted to continue performing under the contract.  However, after Hershey filed this lawsuit and refused to provide Interactive Rides with any assurances that Hershey intended to go forward with the contract, Interactive Rides ceased all further efforts to perform under the contract.

31.     Interactive Rides has never repudiated its obligations under the contract with Hershey or stated an intention not to perform those obligations.

32.     Interactive Rides has never refused to perform its obligations under the contract with Hershey.

33.     Interactive Rides has never asked Hershey to excuse it or release it from its contractual obligations to deliver the Frequent Faller ride to Hershey for the Purchase Price set forth in the contract.

34.     Hershey never rejected Interactive Rides' proposals for addressing the unforeseen cost overruns.  Rather, throughout November 2004 Hershey continued

13

to request additional proposals for addressing the cost overruns – even after it

delivered Hershey's November 17th Letter.

FURTHER AFFIANT SAYETH NAUGHT.

_____

Edward Clay Slade

SUBSCRIBED AND SWORN to before me this ___6___ day of September,

2005.

Notary Public
ELIZABETH A. FERRIN
74 West 100 North
Logan, UT 84321
My Commission Expires
April 16, 2008
State of Utah

NOTARY PUBLIC

14

# Bearnson & Peck, L.C.

### Attorneys At Law

Brad H Bearnson, P.C.
Shaun L Peck, P.C.
Marty E. Moore, P.C.

Bretton K. Hadfield
Daniel K. Dygert
Brandon J. Baxter
David M. Carter

74 West 100 North
P.O. Box 675
Logan, Utah 84321
Telephone: (435) 787-9700
Telefax: (435) 787-2455
speck@cachelaw.com

December 6, 2004

Franklin A. Miles, Jr.
Hershey Entertainment & Resorts
P.O. Box 860
300 Park Boulevard
Hershey, Pennsylvania 17033

Re:   Interactive Rides, Inc.

Dear Mr. Miles:

Please be advised that we represent the interests of Interactive Rides, Inc. ("IR"). I am in receipt of your letter of November 17, 2004 to Clay Slade and Val Potter regarding the Equipment Purchase Agreement and Addendum (the "Agreement") between Hershey and IR. This letter is intended to serve as a response to Hershey's charges, and its request for written assurances.

Initially, Hershey claims that IR has failed to timely complete and provide preliminary design documents. However, as Hershey has been informed by IR, Hershey has requested changes in the design of the ride, but has failed to provide IR with specifications necessary to allow IR to move forward with completing its work. As set forth in the Agreement: "Seller shall not be responsible for any delays due to changes to the ride requested by Buyer or other delays caused by Buyer." IR is prepared to meet its obligations to provide preliminary and final design documents within a reasonable time after Hershey provides IR with information necessary to allow IR to complete its work.

IR has not repudiated its agreement with Hershey. It is true that IR has asked Hershey to consider modifications to the Agreement in light of escalating material and fabrication costs, and in light of IR's inability to make a profit under the current pricing structure. However, IR has never indicated that it would not continue to perform its obligations under the Agreement. IR's letter of November 12, 2004 contained proposals that IR wanted Hershey to consider in light of



EXHIBIT

B

tabbies'

Franklin A. Miles, Jr.
Page 2

changed circumstances in the economy and Hershey's own desired changes. None of the parties foresaw the full extent of the rise in the price of steel and fabrication due to the war in Iraq. IR did not foresee the changes that Hershey would request. These changes have greatly impacted the cost of the ride, and the schedule under which the ride can be completed. IR has asked Hershey to assist in bearing the unexpected price increases, and to work with IR to find a way to accomplish the goal of the parties to produce a great new thrill ride for Hershey's park. Thus far, Hershey has been unwilling to work with IR in this regard. While IR intends to continue its performance under the Agreement, IR now believes there may likely be significant delays in delivering the ride caused by Hershey's changes to the ride design and by the potential need to have significant portions of the ride fabricated overseas. The potential for delay is anticipated in the Agreement, and IR is aware that delivery delays may, where caused by the fault of IR, trigger the liquidated damages provisions of the Agreement. Please take into consideration the foregoing in your efforts to mitigate any damages that may result from any delay in delivery of the ride.

As requested, IR hereby advises Hershey that IR is willing and able to perform its obligations under the Agreement at the agreed upon purchase price. This does not mean, however, that IR should bear the cost of Hershey's changes, or that Hershey should refuse to consider pricing changes due to the rise in materials and fabrication costs. Additionally, delivery of the drawings and the ride may be significantly delayed due to the issues raised in IR's November 12, 2004 letter to Frank O'Connell. Should Hershey desire additional assurances, please let us know.

While we understand Hershey's concerns, it is IR's desire to work with Hershey toward a resolution of this matter that is satisfactory to both parties. It is IR's hope that litigation can be avoided. Any litigation involving this case can be expected to be protracted and expensive. IR is not a large company and litigation can be expected to sap valuable resources and time that could be better spent in finding a constructive way to work through the current problems.

Please direct all correspondence and communication concerning the foregoing to the undersigned.

Yours truly,

BEARNSON & PECK, L.C.

Shaun L Peck

SLP/bf
Cc: Clay Slade, Interactive Rides

# Bearnson & Peck, L.C.

## Attorneys At Law

Brad H Bearnson, P.C.
Shaun L Peck, P.C.
Marty E. Moore, P.C.

Bretton K. Hadfield
Daniel K. Dygert
Brandon J. Baxter
David M. Carter

74 West 100 North
P.O. Box 675
Logan, Utah 84321
Telephone: (435) 787-9700
Telefax: (435) 787-2455

### TELECOPY TRANSMITTAL SHEET

Date:        December 6, 2004

To:          Franklin A. Miles, Jr.

Fax No.      (717) 534-8991

From:        Shaun L Peck

**Message:**   Please see attached letter of today's date.

PLEASE CALL US IMMEDIATELY AT (435) 787-9700 IF THERE ARE ANY PROBLEMS
DURING THIS TRANSMISSION.

No. of Pages (including this sheet):   3

Client/File:    INT2-004

The information contained in this facsimile message is **confidential** and if addressed to our client or certain counsel, is subject to the attorney-client or work product privilege, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above Logan address via the U.S. Postal Service.

Confirmation Report

Date & Time: Dec-06-2004  02:55pm
Tel line    : +14357872455
Machine ID : BEARNSON AND PECK LC

| Nbr. | Job | Date | Time | Duration | pgs | To | Dept.nbr | Account | Comm.code | Status |
|------|-----|------|------|----------|-----|-----|----------|---------|-----------|--------|
| 502 | 465 | Dec-06 | 02:54pm | 00/33 | 003 | 17175348991 | | | EC 603 | OK |

# HERSHEYPARK

## Planning, Engineering and Maintenance

PROJECT:  Change order for
               Frequent Faller

DATE: 11-09-04

TO:    Clay Slade
        Interactive Rides

REF:

FROM: Robert DeFiore

I am forwarding two copies of Change Order No. 1 for design/fabricate accesses to catwalks.  Please review, sign and return both copies to me.  Should you have any questions please give me a call at 534-3335.

| WE ARE SENDING: | SUMITTED FOR: | ACTION TAKEN: |
|---|---|---|
| ☐ Drawings | ▣ Approval/Signature | ☐ Approved as Submitted |
| ☐ Letter | ☐ Quote | ☐ Approved as Noted |
| ☐ Prints | ☐ For your records | ☐ Returned After Loan |
| ▣ Change Order | ☐ Review for Pricing | ☐ Resubmit |
| ☐ Plans | ☐ Bids Due: | ☐ Submit |
| ☐ Samples | **SENT VIA:** | ▣ Return |
| ☐ Specifications | ☐ Attached | ☐ Returned for Corrections |
| ☐ Other: | ☐ Separate Cover Via: | ☐ Return prints |

| ITEM NO. | COPIES | DATE | DESCRIPTION | STATUS |
|---|---|---|---|---|
| 04-11 | 2 | 11-09-02 | Change order for the Frequent Faller | |

REMARKS:



EXHIBIT

C

# CHANGE ORDER

| | | | |
|---|---|---|---|
| **PROJECT:** | **Turbulence**<br>Hersheypark<br>Hershey, Pa | | |

| | |
|---|---|
| CHANGE ORDER NUMBER: | 1 |
| DATE: | 14-Oct-04 |
| ARCHITECT'S PROJECT NO: | n/a |
| CONTRACT DATE: | 23-Apr-04 |
| CONTRACT FOR: | Frequent Faller |

TO CONTRACTOR:  Interactive Rides Inc
708 West 1800 North
Logan, Utah 84321

The Contract is changed as follows:  Design, Fabricate accesses to        $67,500
catwalks from man lift per
attached proposal

Total this change:        $67,500

---

Not valid until signed by the Owner, Architect, and Contractor.

---

The original Guaranteed Maximum Price was.................................................................   $1,995,000
Net change by previously Change Orders........................................................................   $0
The Guaranteed Maximum Price prior to this Change Order was..............................................   $1,995,000
The Guaranteed Maximum Price will be (increased) (decreased) (unchanged) by this Change Order
in the amount of.........................................................................................................
The new Guaranteed Maximum Price including this Change Order will be....................................   $67,500
The Contract Time will be changed by (0) days.   $2,062,500
The Date of Substantial Completion as of the date of this Change Order, therefore is __   3/3/2005

---

**OWNER**
HERSHEYPARK
100 W. HERSHEYPARK DR
HERSHEY, PA 17033

**CONTRACTOR**

BY:_____
DATE:

BY:_____
DATE:

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2005, I served a true and correct copy of the foregoing **EXHIBITS FOR INTERACTIVE RIDES, INC.'S BRIEF OPPOSING HERSHEY ENTERTAINMENT & RESORTS COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND ITS STATEMENT OF MATERIAL FACTS** upon the following party via U.S. Mail, first class postage prepaid, and via facsimile transmission:

Renardo L. Hicks
Anderson, Gulotta & Hicks, PC
121 State Street
Harrisburg, PA 17101


s/*Henry M. Sneath*
_____